UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

UNITED STATES OF AMERICA,

        -against-

                                                               12 Cr. 205 (RPP)

BENNY DIMARCO

              Defendant.
------------------------------------------------------------ X

            DEFENDANT BENNY DIMARCO'S SENTENCING SUBMISSION

                                                           Federal Defenders of New York
                                                           Attorney for Defendant
                                                           **BENNY DIMARCO**
                                                           52 Duane Street - 10th Floor
                                                           New York, New York  10007
                                                           Tel.: (212) 417-8750

                                                           **Jonathan Marvinny**

                                                           <u>Of Counsel</u>


TO:    PREET BHARARA, ESQ.
        United States Attorney
        Southern District Of New York
        One St. Andrew's Plaza
        New York, New York  10007
        **Attn: Martin Bell, Esq.**
                Assistant United States Attorney

**Federal Defenders**
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

*Southern District of New York*
Jennifer L. Brown
*Attorney-in-Charge*

May 17, 2013

**By ECF**

Honorable Robert P. Patterson
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street, Room 2550
New York, New York  10007

    Re:    **United States v. Benny DiMarco**
                **12 Cr. 205 (RPP)**

Dear Judge Patterson:

      I write on behalf of Benny DiMarco in advance of sentencing, which is currently scheduled for May 31, 2013, at 10:00 a.m. Mr. DiMarco pled guilty to three counts: (1 and 2) being a felon-in-possession of a firearm with an altered serial number, 18 U.S.C. §§ 922(g)(1) and (k); and (3) possession of an unregistered silencer, 26 U.S.C. §§ 5845(a) and 5861(d). In Criminal History Category I, his advisory Guidelines range is thirty-seven to forty-six months. For the reasons discussed, I respectfully urge the Court to impose a below-Guidelines sentence.

      Benny DiMarco is a loving father and grandfather who, despite experiencing serious adversity, has always managed to provide for his family. He has a minimal criminal record. Indeed, the felony conviction underlying his felon-in-possession count – a 2003 conviction for improper asbestos removal, for which he served seven days in jail – is among the least severe predicate felonies imaginable. Moreover, Mr. DiMarco has an impressive work history, and has a good full-time job awaiting him upon his release from prison. For all of these reasons, and despite the charges to which Mr. DiMarco pled, the Court should impose a below-Guidelines sentence.

Honorable Robert P. Patterson  May 17, 2013
United States District Court  Page 2 of 8
Southern District of New York

Re:   United States v. Benny DiMarco
      12 Cr. 205 (RPP)

## Background

Forced to grow up too soon

    The oldest sibling of four, Benny DiMarco was born in 1956 in the Bronx. His parents divorced when he was ten. After that, his father was largely absent from his childhood, and provided almost no financial support. Mr. DiMarco's mother worked hard, but could not provide for Mr. DiMarco and his three younger siblings on her own. So Mr. DiMarco went to work at the tender age of thirteen. His first job was washing dishes in a local restaurant. As his sister, Nancy, writes to the Court:

> We watched our father raise and support another family while our Mom had to go out to work. So Benny assumed the role of man of the house. There were times when we lived without heat and hot water. At a young age Benny went to work as a dishwasher just to help mom . . . When I would cry for my father he would comfort me. Eventually as we got older he was the father. I know he was the one putting the Christmas gifts under the tree at Christmas time.

Letter from Nancy DiMarco (Exhibit A).

    Mr. DiMarco was a father figure to all of his siblings. Perhaps for that reason, he was particularly troubled by the tragic death of his younger brother, Vincent, who at twenty-one committed suicide in Mr. DiMarco's presence. Vincent had long suffered from depression and other emotional problems, and often seemed beyond the reach of Mr. DiMarco's help. One night in 1979 he and Mr. DiMarco got into an altercation. Vincent shot Mr. DiMarco and then turned the gun on himself, taking his own life. Mr. DiMarco survived, but was shaken to his core; the incident has haunted him ever since. To this day he has great difficulty discussing Vincent's death.

Honorable Robert P. Patterson  May 17, 2013
United States District Court  Page 3 of 8
Southern District of New York

Re:   United States v. Benny DiMarco
      12 Cr. 205 (RPP)

A long-term struggle with drug addiction and depression

      After Vincent's tragic passing, Mr. DiMarco, then twenty-three, fell into a tailspin. He started using hard drugs like heroin and cocaine. Indeed, substance abuse has plagued Mr. DiMarco on and off since that time. In 1986, for example, he entered a residential drug treatment program and got himself clean. Then in 1991 he developed an addiction to pain killers after being prescribed the medication following a serious accident. He then managed to kick that particular habit and remain sober until around 2007, when he resumed using drugs, including a steady regimen of snorting cocaine.

      For a man now in his fifties, a return to the drug use of his youth was a disastrous occurrence. In 2009 Mr. DiMarco participated in an outpatient drug program in the Bronx, and had some success. But then, while on pretrial release in this case, Mr. DiMarco continued to test positive for cocaine. He was eventually sent back to another inpatient program – this one in Rhineback, New York – which he completed in April of 2012. Nevertheless, he hadn't quit using drugs entirely, and again tested positive for cocaine after he left the program.

      Drug abuse has been a long-term problem for Mr. DiMarco. He knows that maintaining his sobriety is one of the keys to making sure he is never again in trouble with the law. He is determined to corral his addiction before it causes him any further harm.

      Mr. DiMarco is also keenly aware that he needs to be vigilant in fighting a long history of depression. He was first treated for the illness in the 1970's, following Vincent's death. While on pretrial release in this case he sought mental health counseling at the same program where he received drug treatment. And, since being incarcerated at the MCC, he has been taking an anti-depressant and meeting with a psychiatrist. The treatments are paying off: Mr. DiMarco is open and insightful about the deleterious effects depression has had on his life, and knows that he needs to stay in treatment in the future.

Honorable Robert P. Patterson                               May 17, 2013
United States District Court                                 Page 4 of 8
Southern District of New York

Re:    <u>United States v. Benny DiMarco</u>
       12 Cr. 205 (RPP)

<u>Becoming the father he never had</u>

    Despite the adversity Mr. DiMarco has faced, he has always endeavored to be a compassionate and attentive family man. He has six children from marriages to two women. Even when his relationships with their mothers were rocky, he tried to stay involved in his children's lives. Some of those children have written the Court in an effort to describe the kind of father Mr. DiMarco has been to them:

- <u>Tonya DiMarco</u> (age 31): I just want you to know [Mr. DiMarco] truly does have a heart of gold and never had it easy when he was growing up. I miss him so much and I need him back in my life he was the loving one who always made me smile when growing up . . . I miss him and won't feel complete until he is out of [jail]. Letter from Tonya DiMarco (Exhibit B).

- <u>Michelle DiMarco</u> (20): [Mr. DiMarco] taught me two very valuable things[:] to have respect and to never give up. These two values/morals I carry everywhere. My relationship with my father is very strong. He always knows what to say when I feel lost and lose sight of my goals. My father always tells me to stick to school and that no one can ever take that away from me. I look up to him so much because no matter what he always tells me everything will be okay with a smile on his face. Letter from Michelle DiMarco (Exhibit C).

- <u>Dylan DiMarco</u> (17): My dad is a strong man but I have seen him with tears in his eyes because he thinks he let us down . . . When dad got arrested everyone was in shock . . . He begs me every time I talk to him to try and focus on the good things in life and to stay out of trouble. Letter from Dylan DiMarco (Exhibit D).

    Mr. DiMarco is currently in a committed relationship with Eileen Masiello-Brown, who has stood by him during this difficult period in his life.

Honorable Robert P. Patterson                              May 17, 2013
United States District Court                                 Page 5 of 8
Southern District of New York

Re:    United States v. Benny DiMarco
        12 Cr. 205 (RPP)

Ms. Masiello-Brown has also written the Court to discuss the man she knows Mr. DiMarco to be:

> I have a 73 year old father who doesn't care for a lot of people, but Benny he likes. Benny earned my dad's respect because of what my dad has seen of Benny. Benny spends a lot of time around my family and we are very family orientated . . . I have [neighbors] that love him. He would help them with there [sic] houses, decks, shoveling, basically anything they would need. He even came to the school I work at and volunteered. He is well liked anywhere he goes . . . .

Letter from Eileen Masiello-Brown (Exhibit E).

A good job awaits him upon release

      As discussed, Mr. DiMarco was forced to start working at a young age after his father left the family with meager resources. That strong work ethic, evident so early, has guided Mr. DiMarco throughout his entire life. He has worked as, *inter alia*, a car salesman, a carpenter, and a contractor.

      Before his incarceration in this case, Mr. DiMarco was working as a safety manager with a company called SSC High Rise Construction ("SSC"). The president of SSC has written the Court to discuss Mr. DiMarco's impressive work ethic. *See* Letter from Timmy Mahoney (Exhibit F). He writes, "I asked [Mr. DiMarco] why a man his age would want to break his back like this. His words to me where [sic] I would clean barns if I had to, I just want to work." *Id.* Crucially, SSC has a job waiting for Mr. DiMarco when he is released from prison. *See id.* ("When Benny is released there will be a full time position in this company for him.").

Honorable Robert P. Patterson  May 17, 2013
United States District Court  Page 6 of 8
Southern District of New York

Re:    United States v. Benny DiMarco
       12 Cr. 205 (RPP)

## Argument

<u>The legal standard</u>

       The Guidelines range is but one of many factors set forth in 18 U.S.C. § 3553(a) that a district court is to consider when imposing sentence. *See generally United States v. Booker*, 543 U.S. 220 (2005). "The Guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable." *Nelson v. United States*, 555 U.S. 350, 352 (2009) (emphasis in original). The overarching command of § 3553(a) is that sentences should be "sufficient, but not greater than necessary" to achieve the basic goals of retribution, deterrence, and rehabilitation. To arrive at such a sentence, district courts are directed to consider: (1) the nature and circumstances of the offense and the history and characteristics of the offender; (2) the need for the sentence imposed to provide just punishment, deterrence, and needed educational and vocational training; (3) the kinds of sentences available; (4) the Guidelines range and any pertinent policy statements issued by the Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among similarly situated defendants; and (6) the need to provide restitution. *See* 18 U.S.C. § 3553(a).

       As discussed below, in this case, the sentencing factors, particularly Mr. DiMarco's compelling personal characteristics and lack of significant criminal record, merit a downward variance from the advisory Guidelines range.

<u>A below-Guidelines sentence is appropriate, despite the charges</u>

       Nothing in this submission should be construed as an attempt to minimize the seriousness of Mr. DiMarco's unlawful conduct. Everyone is keenly aware of the dangers that guns pose to our society. No one, including Mr. DiMarco, would attempt to argue otherwise.

       But there are strong reasons why a below-Guidelines sentence is appropriate here. First, while Mr. DiMarco is a felon-in-possession, his prior felony is among the least severe felonies imaginable. In 2003, Mr. DiMarco

Honorable Robert P. Patterson  May 17, 2013
United States District Court  Page 7 of 8
Southern District of New York

Re:   United States v. Benny DiMarco
      12 Cr. 205 (RPP)

pled guilty to an offense involving the improper removal of asbestos, for which he served seven days. He is not like the countless felon-in-possession defendants whose prior felonies often include multiple crimes of violence and drugs.

      Second, Mr. DiMarco – a fifty-six-year-old grandfather – is older than most firearm possession defendants. His advanced age makes it less likely that he will reoffend in the future. This is especially true given the relative lack of severity of his prior criminal record. Indeed, he is in Criminal History Category I. It is fair to say that Mr. DiMarco's conduct in this case was aberrational, given his age and criminal record.

      Next, Mr. DiMarco's struggle with substance abuse and depression means that treatment and supervision, rather than lengthy jail time, would better address his needs and be more effective at ensuring that he does not commit any crimes in the future. In that way, deterrence concerns, *see* 18 U.S.C. § 3553(a)(2)(B), would actually be best served by a shorter prison term followed by supervised release with a mandate to attend a drug treatment program. After all, courts are directed to fashion sentences that "provide the defendant with needed . . . medical care, or other correctional treatment in the most effective manner." § 3553 (a)(2)(D).

      Finally, the Court can rest assured that Mr. DiMarco will land on his feet upon his release from prison. He has a warm and loving family to return to. And, perhaps more importantly, he has a good job awaiting him as well. As noted, the president of SSC construction has a full-time position waiting for Mr. DiMarco upon his release. Accordingly, Mr. DiMarco is well-situated to successfully reenter society.

* * *

Honorable Robert P. Patterson            May 17, 2013
United States District Court               Page 8 of 8
Southern District of New York

Re:     <u>United States v. Benny DiMarco</u>
        12 Cr. 205 (RPP)

      For all of the reasons discussed in this submission, the Court should impose a below-Guidelines sentence.

                                                           Respectfully submitted,

                                                           <u>/s/ Jonathan Marvinny</u>
                                                           Jonathan Marvinny
                                                           Assistant Federal Defender
                                                           Tel: (212) 417-8792

cc:     Martin Bell, Esq. (by ECF)
        Assistant United States Attorney